**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary D. Klein, | No. CV-06-1134-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| Donald Rumsfeld, Secretary of Defense, et. al., | |
| Defendants. | |

Plaintiff Gary D. Klein seeks to resign as Chief Warrant Officer Two in the Arizona National Guard ("AZNG"). Three times in 2005, he tendered his resignation, and three times in the same year, it was not accepted. On April 14, 2006, Plaintiff was ordered to active duty. He now seeks a preliminary injunction enjoining his activation.[1]  (Doc. 20.)

---

[1] The Response of the Federal Defendants (which include Donald Rumsfeld (the Secretary of Defense), Francis J. Harvey (Secretary of the United States Department of the Army), Lieutenant James L. Helmly (Commander of the United States Army Reserve), and Lieutenant Clyde A. Vaughn (Director of the Army National Guard)) to the Motion for a Preliminary Injunction doubles as a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 29).  This Order will address the portion of that motion challenging this Court's subject matter jurisdiction, but not the portion seeking to dismiss for failure to state a claim, as that issue has not yet been fully briefed.

**I.     BACKGROUND**

The basic facts are not in dispute:  Plaintiff graduated from the United States Naval Academy in 1985 and served as a helicopter pilot in the Marine Corps until his discharge from active service in 1996.  At that time, Plaintiff began to work for Boeing Corporation as an engineer on "military rotorcraft."  (Compl. ¶ 19.)  After the September 11, 2001 terrorist attacks, Plaintiff approached the AZNG about serving in the national guard as an attack helicopter pilot.  On July 1, 2002, the AZNG commissioned him as a Chief Warrant Officer Two and assigned him to an attack helicopter unit.

Plaintiff attended two training courses, one seventeen weeks, the other ten weeks, related to the piloting and maintenance of an Apache attack helicopter.  After he completed both courses, he attempted, on three separate occasions, to resign due to the chronic mental illness of two of his children, in both of whose care Plaintiff regularly participates.  The AZNG did not accept the resignations, the reasons for which will be discussed in greater detail below.  On April 14, 2006, the Office of the Adjutant General ordered Plaintiff to active duty.  A week later, Plaintiff filed a Complaint in this Court, and on April 25, 2006, Plaintiff sought a temporary restraining order ("TRO") enjoining his activation.  On May 1, 2006, the Court was notified that Plaintiff's activation was delayed for sixty days until June 30, 2006.  On May 11, 2006, Plaintiff filed the instant motion for a preliminary injunction, and a hearing was held concerning that motion on June 16, 2006.

The Verified Complaint describes itself as a "constitutional and statutory challenge" to various regulations affecting a "non-obligated" officer's right to resign. (Compl. ¶ 2.)  The regulations allegedly violate the Thirteenth Amendment by causing involuntary servitude and Title X of the United States Code, which, according to the Complaint, provides that service in the military is voluntary, subject to certain exceptions inapplicable to Plaintiff.  (Compl. ¶ 3.)  The Complaint seeks declaratory and injunctive relief; specifically, it seeks, among other things, an order enjoining Plaintiff's activation to military service and essentially terminating all further obligations Plaintiff may have to any of the Defendants.  (Compl. at 24-25.)

## II.     LEGAL STANDARDS AND ANALYSIS

### A.     Subject Matter Jurisdiction and Other Issues

Plaintiff concedes that the Complaint should have been filed as a petition for a writ of habeas corpus, as such a writ is the appropriate remedy for a serviceman who claims to be "unlawfully retained in the armed forces." *See Parisi v. Davidson,* 405 U.S. 34, 39 (1972). It is within the Court's power to treat a Complaint as a habeas petition despite it not having been filed that way, and the Court exercises that power here. *See Rooney v. Sec'y of Army,* 405 F.3d 1029, 1031 (9th Cir. 2005). Insofar as the Federal Defendants moved for dismissal based on Plaintiff's failure to style his Complaint as a petition for writ of habeas corpus, that motion is denied.

Plaintiff seems to concede that the allegations in the Complaint do not implicate the Thirteenth Amendment. (Pl.'s Reply in Supp. of Mot. for Prelim. Inj. ("Pl.'s Reply") at 1, stating that "It may well be that Plaintiff should have alleged a [due process violation] rather than a Thirteenth Amendment claim.") Plaintiff is wise to make this concession, as even if his allegations are true, they do not amount to involuntary servitude. *See, e.g., Arver v. United States,* 245 U.S. 366, 390 (1918) (holding that compulsory military service does not violate the Thirteenth Amendment).

Despite these concessions, the substance of Plaintiff's arguments remains largely unaffected. Now those arguments are clothed in the language of due process instead of involuntary servitude. Plaintiff asserts that Defendants' failure to follow statutes and their own regulations violated his due process rights. (Pl.'s Reply at 2.)

### B.     Preliminary Injunction

Plaintiff is entitled to a preliminary injunction if he can show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping sharply in his favor. *MAI Sys. Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 516 (9th Cir. 1993) (internal quotations and citations omitted).

The above standard is a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Diamontiney v. Borg,* 918 F.2d 793, 795 (9th Cir. 1990). Thus, if a party can show a strong chance of success on the merits, he need only show a possibility of irreparable harm. *MAI,* 991 F.2d at 517 (internal quotations and citations omitted). Where a party can show only that serious questions are raised, he must show that the balance of hardships tips sharply in his favor. *Id.*

There are, as Defendants point out, some additional standards that come into play where the desired injunction concerns the military, but in light of the Court's conclusions below as to the likelihood of Plaintiff's success on the merits, the Court will omit discussion of those standards.

### 1.    **Likelihood of Success**

This case is about Defendants' refusal to allow Plaintiff to resign. Plaintiff contends that he has a legal right to do so; Defendants disagree for several reasons, only one of which needs to be addressed here since it was, by itself, a proper basis for refusing Plaintiff's resignation.

#### a.    **Indefinite Term**

Defendants argue that warrant officers serve indefinitely and therefore do not have an automatic right to resign. Plaintiff argues that because he served his initial term of fixed duration, once that term expired, he was free to resign essentially at will.

The dispute revolves primarily around two statutory provisions, 10 U.S.C. § 12241(c) and 10 U.S.C. § 651(a). 10 U.S.C. § 651 provides that, "Each person who becomes a member of an armed force . . . shall serve in the armed forces for a total initial period of not less than six years nor more than eight years . . . ." 10 U.S.C. § 12241(c) states that, "Appointments as Reserves in permanent warrant officer grades are for an indefinite term and are held during the pleasure of the Secretary concerned."

Plaintiff's argument relies on what he perceives to be a distinction between an "obligation" and a "term" of service. According to Plaintiff, § 651(a) creates a six to eight year service "obligation" after which the military lacks authority to deny a resignation

1  (subject to the President's stop-loss authority), and during which resignation is subject to the
2  discretion of the military.  By contrast, Plaintiff argues, § 12241(c) addresses "terms," not
3  "obligations."  Plaintiff reads § 12241(c) to create an "indefinite term," which "does not refer
4  to an officer's obligation.  It simply means an officer need not re-enlist, because his *term* of
5  service (as opposed to his service obligation) has no built-in expiration."  (Pl.'s Mot. for
6  Prelim. Inj. at 7.)

7  Defendants do not dispute Plaintiff's view that § 651(a) requires all members of the
8  armed forces to commit initially for between six and eight years.  But that initial
9  commitment, according to Defendants, has no effect on additional commitments that
10  members of the armed forces may choose to undertake.  One such additional commitment
11  is appointment as a warrant officer.  In that event, Defendants assert, one's service is
12  controlled by, among other provisions, § 12241(c), which states that, upon accepting
13  appointment as a warrant officer, one serves an "indefinite term," meaning that resignation
14  is subject to the approval of the "Secretary concerned."

15  The Court accepts Defendants' interpretation of the statute and rejects Plaintiff's.
16  Section 651(a) prescribes the minimum "initial period" that each member of the armed forces
17  must serve.[2]  That section does not purport to extend to additional commitments undertaken
18  by members of the armed forces, such as service as a warrant officer.  The terms of such a
19  commitment are controlled by § 12241(c), which specifically states that warrant officers
20  serve for an "indefinite term" at the "pleasure of the Secretary concerned."  The plain
21  meaning of the latter phrase is that a warrant officer may not simply resign at will, but must
22  seek a favorable exercise of discretion from his superiors.

23  The distinction Plaintiff perceives to exist between an "obligation" and a "term" does
24  not exist, or at least, it does not exist in the way Plaintiff says it does.  An obligation is a
25  requirement.  Sections 651(a) and 12241(c) deal with different, sometimes related, sets of

---

[2]The parties do not dispute that Plaintiff completed that initial period during his service with the Marine Corps after his graduation from the Naval Academy.

- 5 -

1 obligations, and those obligations take the form of terms of service. § 651(a) obligates all
2 members of the armed forces to undergo an initial term of service of six to eight years. But
3 if a member, like Plaintiff, accepts an appointment as a warrant officer, then his obligation
4 changes, and so does his term; he is now obligated to an indefinite term, which is not to say
5 that he must serve forever, but that he may not unilaterally terminate his service.

6 This plain reading of the statute is supported by the particular function that officers
7 serve in the military. In Plaintiff's view, because he had completed his initial term during his
8 service as a marine, he could resign from his position as a warrant officer at any time, subject
9 only to the President's stop-loss authority. But officers, like Plaintiff, hold greater
10 responsibility in the military than enlisted personnel. To allow service personnel possessing
11 such responsibility to resign at will would undermine the country's ability to maintain a ready
12 and effective military. These principles were at issue in *Baldauf v. Nitze,* 261 F. Supp. 167,
13 168 (S.D. Cal. 1966), where a lieutenant commander of the Navy (an officer) challenged the
14 denial of his resignation. The court rejected the challenge and cited instructions issued by
15 the Secretary of the Navy concerning resignations:

16 > Officers serve at the pleasure of the President and no terminal dates are
17 > established for their commissions. The Secretary of the Navy, by virtue
18 > of his authority to act for the President, establishes such criteria for the
19 > voluntary resignation of an officer's commission with release from
20 > active duty *as are deemed necessary for the maintenance of a sound*
21 > *officer corps.*

22 *Id.* at 169 (emphasis added). The Navy denied the plaintiff's resignation based upon its
23 determination that there was "an acute shortage of navy pilots and the fact that plaintiff had
24 a unique background of experience." *Id.* (internal punctuation omitted).

25 Coincidentally, Plaintiff's resignation appears to have been denied for similar reasons
26 as the plaintiff's in *Baldauf.* According to Colonel Kenneth Nettles, an Army Commander
27 stationed in Phoenix, the Army, the Army Reserves and the National Guard are suffering a
28 critical shortfall of people like Plaintiff who have experience piloting and maintaining the

1 Apache attack helicopter. (Fed. Defs.' Resp. to Pl.'s Mot., Ex. 1 at 3.) "His absence will
2 threaten the unit's ability to complete its mission while simultaneously putting the other pilots
3 in greater danger . . . ." (Fed. Defs.' Resp. to Pl.'s Mot., Ex. 1 at 3.) Plaintiff's suggestion that
4 officers may essentially resign at will contradicts the principles discussed in *Baldauf.*

5 Other courts, while relatively few, have come to the same conclusion as to the
6 indefinite nature of an officer's service and the disallowance of at-will resignations. In
7 *Springstead v. Claytor,* 586 F.2d 990, 991 (4th Cir. 1978), the plaintiff had joined the Marine
8 Corps as a reservist, and his service agreement required that he serve at least four years of
9 active duty. He later accepted a presidential commission to serve as an officer. *Id.* When
10 he was informed of his impending transfer to Okinawa, he tendered his resignation, which
11 was not accepted. *Id.* On appeal, he argued that § 651 limited the duration of his service.
12 *Id.* at 992. The Fourth Circuit disagreed, reasoning that § 651 "was enacted as a part of the
13 selective service laws that prescribe minimum service obligations for all American men. It
14 does not limit the duration of a permanent commission in the regular service." *Id. See also*
15 *Baldauf,* 261 F. Supp. at 169 ("Historically, it has been universally accepted than an officer
16 of the armed forces cannot leave the service until his resignation is accepted by the
17 President."). *See, e.g., Nicholson v. Brown,* 599 F.2d 639, 644 n.4 (5th Cir. 1979).

18 Plaintiff argues that *Springstead* is irrelevant because a different version of § 651 was
19 in operation at the time. Five years after *Springstead,* Congress amended § 651: whereas
20 it formerly stated that the initial period of service was six years, the new (and current) version
21 affirmatively limited the initial period to no more than eight years. According to Plaintiff,
22 the previous version (that bound the *Springstead* court) did not cap the initial period, but the
23 current version unequivocally does.

24 Plaintiff's argument overlooks the fact that, as discussed above, the term of a service
25 member who chooses to accept an appointment as a warrant officer becomes indefinite and
26 is not limited by § 651(a) which deals exclusively with a service member's *initial* period of
27 service. There is no reason to believe that the amendment to § 651 affected a sea change in
28 the fundamental nature of what it means to be an officer. Before the amendment and after

1   it, service members commit to being officers with the understanding that they may not resign
2   at will.
3         Plaintiff also relies on an Army Regulation ("AR") concerning officers who incur
4   active duty service obligations ("ADSO"). (Decl. of David Beach in Supp. of Pl.'s Mot. for
5   Prelim. Inj., Ex. C ("AR 350-100"), Ch. 1, 1-9.) That regulation states, in relevant part:

> a.   Generally, officers who complete certain formal training or education . . . incur an ADSO.
>
> b.   Officers must fulfill ADSOs before they are eligible for voluntary separation. . . .
>
> c.   Officers will not be further obligated beyond the dates voluntary ADSOs are fulfilled without their consent, either expressed or implied.

(AR 350-100, Ch. 1, 1-9.)

      Plaintiff's argument, which focuses on subsection c, seems to go like this: an officer who undergoes certain training incurs an ADSO; once he fulfills that obligation, he may not be further obligated without his consent; therefore, because he cannot be further obligated, he must be able to resign without the military's approval. Plaintiff's argument confuses *eligibility* for voluntary separation with the *right* to voluntary separation. An officer who undergoes certain training *must* continue to serve for a specified period of time; that is, he is ineligible for voluntary separation. Once the obligation ends (and he becomes eligible for voluntary separation), he is free to tender his resignation, but the Army is under no requirement to accept it, in light of § 12241(c), which gives the Army discretion over the resignation of warrant officers. By no stretch of the imagination can AR 350-100 be read to mean that an officer whose resignation is subject to approval by the Army but who undergoes certain types of training wins the right to resign without the Army's approval.

      In sum, because Plaintiff is an officer, he may not resign at will. His resignation is subject to Defendants' discretion. The manner in which Defendants have chosen to exercise that discretion, even Plaintiff concedes, is beyond this Court's review.

### 2. Balance of Hardships

Because Plaintiff has not demonstrated a likelihood of success on the merits, it is unnecessary to determine whether a balance of hardships favors a preliminary injunction.

**IT IS ORDERED** denying Plaintiff's Motion for Preliminary Injunction (Doc. 20).

DATED this 27th day of June, 2006.

_____
Susan R. Bolton
United States District Judge